**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMIL MCKINNEY,<br><br>Plaintiff,<br><br>v.<br><br>TODD BLANCHE, Acting Attorney General, & ROBERT CEKADA, Director, ATF,[1]<br><br>Defendants. | No. 25cv2210 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

*Pro se* Plaintiff Jamil McKinney challenges 18 U.S.C. § 922(g)(1), which prohibits firearm possession by persons convicted of crimes punishable by more than one year of imprisonment. Plaintiff alleges that the statute is unconstitutional both facially and as applied to him and also violates the Fifth Amendment. D.E. 4-3 ¶¶ 1–2, 12–19.

Plaintiff commenced this matter on April 1, 2025, by submitting a complaint and an application to proceed *in forma pauperis* ("IFP"). D.E. 1; D.E. 1-2. On April 22, 2025, the Court denied that application without prejudice because Plaintiff had not supplied the financial information needed to determine indigence. D.E. 3. The Court administratively terminated the matter and directed Plaintiff, within thirty days, either to pay the filing fee or to submit a financial affidavit that "completely and accurately lists and explains all amounts and information called for by the form." *Id.*

---

[1] Plaintiff sued Merrick Garland and Steven Dettelbach solely in their official capacities. D.E. 4-3 ¶¶ 8–9. Under Federal Rule of Civil Procedure 25(d), Attorney General Todd Blanche and ATF Director Robert Cekada are automatically substituted as Defendants. The Clerk will be directed to update the caption.

On December 8, 2025, Plaintiff filed D.E. 4. That submission includes: (1) another short "Statement of Indigency," D.E. 4 at 1; (2) a separate affidavit addressing some financial circumstances, D.E. 4-2 (the "Financial Affidavit"); (3) several pages of legal discussion, D.E. 4 at 2–7; and (4) a four-page pleading styled as a motion for declaratory and injunctive relief, D.E. 4-3. Reading the submission liberally, the Court treats D.E. 4 at 2–7 and D.E. 4-3 together as the operative pleading (the "Second Complaint"), and treats D.E. 4 at 1 and D.E. 4-2 together as the Second IFP Application.

Because Plaintiff's Second IFP Application remains incomplete and internally inconsistent—notwithstanding the Court's prior direction that Plaintiff disclose all requested financial information and amounts—the Court still cannot determine whether Plaintiff qualifies to proceed IFP. The Court will therefore **DENY** the Second IFP Application ***without prejudice***.

The Court will nevertheless screen the Second Complaint under § 1915(e)(2). For the reasons below, the facial Second Amendment challenge will be **DISMISSED** ***with prejudice***, while the as-applied Second Amendment and Fifth Amendment claims will be **DISMISSED** ***without prejudice***, with one opportunity to amend.

## I. BACKGROUND[2]

The Second Complaint alleges that Plaintiff was convicted of a "2019 violent felony" involving an "assault/weapon" after he was "put in fear of immediate bodily harm." D.E. 4-3 ¶¶ 7, 10. Plaintiff does not identify the statute of conviction, the judgment, the sentence, or the date on which he completed custody and supervision. He alleges that he completed all

[2] In deciding whether a complaint states a claim, the Court may consider matters of public record. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). The Court may therefore take notice of another court's opinion for the existence and disposition of that proceeding, but not for the truth of every fact recited there. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999).

sentencing requirements, has committed no later crimes, is no longer on probation or parole, attends college, volunteers with violence prevention organizations, founded a nonprofit organization, and no longer presents a danger to the public. *Id.* ¶¶ 4, 7, 10. He states that he wants to possess firearms for self-defense and other lawful purposes. *Id.* ¶ 11.

Plaintiff advances three related constitutional theories. *First*, he contends that § 922(g)(1) is an invalid categorical lifetime ban. *Second*, he contends that the statute is unconstitutional as applied to him because he is rehabilitated and no longer dangerous. D.E. 4-3 ¶¶ 1–4, 11–15. *Third*, he alleges that the statute violates the Fifth Amendment because it provides no mechanism for individualized review of his firearm disability. *Id.* ¶¶ 16–19.

The Court takes judicial notice of the existence and disposition of the publicly available opinion in *State v. McKinney*, 223 N.J. 475 (2015), but not of every factual assertion recited in that opinion. The opinion records that a jury convicted Plaintiff in 2009 of second-degree conspiracy, first-degree robbery, second-degree burglary, and resisting arrest; that the jury acquitted him of aggravated assault and did not reach verdicts on the weapons counts; and that Plaintiff received, among other concurrent terms, a ten-year sentence subject to the No Early Release Act on the burglary conviction. *Id.* at 482–87.

In *McKinney*, the Appellate Division reversed the first-degree robbery conviction and remanded that count for a new trial, while affirming the second-degree burglary conviction, and the New Jersey Supreme Court affirmed that disposition. *Id.* at 477–78, 487–88. The materials presently before this Court do not reveal the post-remand disposition of the robbery count. Accordingly, the Court does not treat the robbery count as a current conviction. The public record does, however, establish an affirmed second-degree burglary conviction and leaves unexplained the Second Complaint's reference to a "2019" conviction. *Compare* D.E. 4-3 ¶¶ 7, 10 (alleging

that Plaintiff was convicted of a "2019 violent felony"), *with McKinney*, 223 N.J. at 482–88 (reflecting Plaintiff's 2009 convictions and affirmance of his second-degree burglary conviction).

## II. LEGAL STANDARD

### A. Proceeding IFP

Under 28 U.S.C. § 1915(a)(1), a court may authorize a litigant to proceed without prepaying fees if the litigant submits a proper affidavit and "establish[es] that he is unable to pay the costs of his suit." *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Although § 1915 refers in part to prisoners, courts apply § 1915(a)(1) to non-prisoner litigants as well. *See Hickson v. Mauro*, No. 11-6304, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011) (collecting cases).

The affidavit must be complete, made in good faith, and provide enough detail for the Court to evaluate the applicant's financial condition. An incomplete financial affidavit does not satisfy § 1915(a)(1). *Atl. Cnty. Cent. Mun. Ct., Inc. v. Bey*, No. 24-105, 2024 WL 1256450, at *1 (D.N.J. Mar. 25, 2024) (citing *Rohn v. Johnston*, 415 F. App'x 353, 354–55 (3d Cir. 2011)). Whether to grant IFP status lies within the Court's discretion. *Cotto v. Tennis*, 369 F. App'x 321, 322 (3d Cir. 2010).

### B. Screening and Pleading

Section 1915(e)(2) requires dismissal of a complaint that is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B). The Court may conduct that screening "at any time," regardless of whether it first grants or denies IFP status; the Court may evaluate the merits and the IFP application "in either order or even simultaneously." *Brown v. Sage*, 941 F.3d 655, 659–60 (3d Cir. 2019) (en banc).

The standard under § 1915(e)(2)(B)(ii) is the same standard that governs a motion under Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.

1999). A complaint must contain enough factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts but does not accept legal labels, unsupported conclusions, or speculation as facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rule 8 separately requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Because Plaintiff proceeds *pro se*, the Court construes his allegations liberally and applies the relevant legal principles even if he has not used the correct label. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). Liberal construction, however, does not permit the Court to invent facts or a viable legal theory that the pleading does not supply. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. ANALYSIS

### A. The Second IFP Application Is Incomplete and Internally Inconsistent

The Second IFP Application does not cure the defects identified in the Court's April 22, 2025 Order. The one-page Statement of Indigency repeats that Plaintiff is "unemployed/earns minimal income," offers examples rather than an actual answer as to government assistance, states that Plaintiff has "no significant assets," identifies approximately $20,000 in bank debt, and says Plaintiff has one dependent. D.E. 4 at 1. It supplies no dollar amount for income, benefits, cash, bank balances, household support, or monthly expenses.

The separate Financial Affidavit adds some information but leaves material questions unanswered. For example, it states that Plaintiff has no steady earned income, lives with his sister rent-free, relies on her for food and shelter, and receives "occasional small support" from family. D.E. 4-2 at 1. Yet it does not quantify the value, amount, or frequency of that support. Similarly, the response concerning government benefits retains the drafting instruction "[Insert 'None' or list if you receive anything]" instead of supplying an answer. *Id.* The affidavit states that Plaintiff has

no "meaningful" account balance, but provides no balances; it gives no monthly expense amounts; and it omits the $20,000 debt disclosed in the Statement of Indigency. *Id.* It also says Plaintiff has no dependents, directly contradicting the Statement of Indigency. *Compare* D.E. 4 at 1 (stating that Plaintiff has one dependent), *with* D.E. 4-2 at 1 (stating that Plaintiff has no dependents).

The Court will not guess which answers are accurate or supply amounts that Plaintiff omitted. These omissions and contradictions prevent the Court from determining whether Plaintiff can pay the filing fee without sacrificing life's necessities. *See Sinwell v. Shapp,* 536 F.2d 15, 19 n.14 (3d Cir. 1976) (district court must pass on sufficiency of affidavit of poverty). Because Plaintiff has not provided the necessary information to determine his financial eligibility, the Court will **DENY *without prejudice*** his Second IFP Application. *See Rohn v. Johnston*, 415 F. App'x 353, 355 (3d Cir. 2011). Plaintiff will receive a final opportunity to submit a complete AO 239 form that answers every question with actual amounts and reconciles the inconsistencies identified above.

### B. The Second Complaint Fails to State a Claim On the Merits

Plaintiff alleges a present desire to possess a firearm for self-defense and other lawful purposes, conduct prohibited to him by § 922(g)(1), and seeks prospective relief from enforcement. D.E. 4-3 ¶ 11. Liberally construed, those allegations are sufficient at this stage to present a pre-enforcement controversy of the kind considered in *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025). The question is whether the Second Complaint plausibly states the constitutional claims it asserts.

#### *1. Second Amendment*

Section 922(g) identifies several categories of persons who may not possess firearms. This case concerns subsection (g)(1), which makes it unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a

firearm or ammunition in or affecting commerce. 18 U.S.C. § 922(g)(1). The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court recognized an individual right to possess firearms for lawful purposes while describing "longstanding prohibitions on the possession of firearms by felons" as "presumptively lawful." 554 U.S. 570, 626–27 & n.26 (2008).

When the Second Amendment's plain text covers the proposed conduct, the Constitution presumptively protects that conduct, and the Government must justify the challenged restriction by showing consistency with the nation's historical tradition of firearm regulation. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17, 24 (2022). Historical analysis does not demand a "dead ringer" or "historical twin." *Id.* at 30. The question is whether the modern restriction is relevantly similar to historical regulations in how and why it burdens the right. *Id.* at 29–30; *United States v. Rahimi*, 602 U.S. 680, 691–93 (2024). *Rahimi* identified a historical principle that an individual who poses a clear threat of physical violence may be disarmed. 602 U.S. at 698–700.

In *Range*, the Third Circuit held § 922(g)(1) unconstitutional as applied to a man whose only disqualifying conviction was a decades-old, nonviolent food-stamp offense, who had no history of violence, and as to whom the record contained no evidence of present physical danger. 124 F.4th at 222–24, 232. The court emphasized that its holding was "narrow." *Id.* at 232.

*Pitsilides* then explained how courts must evaluate other as-applied challenges. A felon may seek prospective relief through a declaratory-judgment action, but the record must permit an individualized determination whether the applicant presently poses the danger contemplated by *Rahimi* and *Range*. 128 F.4th 203, 210–12 (3d Cir. 2025). Disarmament remains justified while the individual presents a special danger of misusing firearms or would likely pose a physical danger to others if armed. *Id.* at 211. The inquiry considers the predicate offense and its

underlying conduct, the person's entire criminal history, and post-conviction conduct bearing on dangerousness. *Id.* at 212–13. Some offenses may themselves provide conclusive evidence of such danger; other cases require broader factual development. *Id.* at 212.

Two authorities on which Plaintiff relies no longer support his position. The district court decision in *United States v. Bullock*, 123 F.4th 183 (5th Cir. 2024) (per curiam), cited throughout D.E. 4, was reversed. The Fifth Circuit held that § 922(g)(1) was constitutional as applied to a defendant whose aggravated-assault and manslaughter convictions involved firearm violence. *Bullock*, 123 F.4th at 184–85. And the Supreme Court reversed the Fifth Circuit decision in *Rahimi* on which Plaintiff relies, holding § 922(g)(8) constitutional as applied to a person found by a court to present a credible threat to another's physical safety. 602 U.S. at 693, 698–700. Neither decision establishes that § 922(g)(1) is categorically unconstitutional. Those developments undermine Plaintiff's broad reliance on those cases, but they do not themselves resolve his as-applied § 922(g)(1) theory. The Court therefore considers Plaintiff's facial and as-applied Second Amendment challenges separately.

*2. Facial challenge*

Although the requested relief is phrased largely in as-applied terms, the Second Complaint also alleges that § 922(g)(1) is an invalid "categorical" ban and asks the Court to consider the statute unconstitutional generally. D.E. 4 at 7; D.E. 4-3 ¶¶ 1, 12–15. A facial challenger must establish that the statute has no constitutional applications. *Rahimi*, 602 U.S. at 693. Plaintiff cannot make that showing. *Rahimi* recognizes the historical permissibility of disarming persons who pose demonstrated threats of physical violence, *see* 602 U.S. at 698–700; *Pitsilides* confirms that § 922(g)(1) may constitutionally apply to felons who continue to pose a special danger, 128 F.4th at 211–12; and *Bullock* identifies one such constitutional application, 123 F.4th at 185.

Because amendment cannot cure that legal defect, the facial Second Amendment challenge will be **DISMISSED *with prejudice***.

*3. As-applied challenge*

Plaintiff's as-applied theory is not foreclosed merely because he has a felony conviction. *Range* rejected that categorical approach, and *Pitsilides* requires an individualized inquiry. But the Second Complaint does not provide the facts needed to conduct that inquiry. It does not identify the precise predicate conviction, describe the conduct underlying it in a coherent manner, disclose Plaintiff's full criminal history, state when custody or supervision ended, or provide concrete facts about his post-conviction conduct. The assertions that Plaintiff is "fully rehabilitated," "law-abiding," and "poses no ongoing danger" are conclusions, not factual allegations from which the Court can evaluate present dangerousness. D.E. 4-3 ¶¶ 4, 7, 10–12; *see Iqbal*, 556 U.S. at 678.

The limited facts that can properly be noticed also distinguish this pleading from *Range*. The public record reflects an affirmed second-degree burglary conviction carrying a ten-year sentence, not a single nonviolent benefits offense resolved by probation. *State v. McKinney*, 223 N.J. at 482–88. The Court does not take the state opinion's trial narrative as true for purposes of screening and does not now decide that the burglary conviction conclusively establishes present dangerousness. But Plaintiff must confront, rather than obscure, the conviction that subjects him to § 922(g)(1) and allege the individualized facts that *Pitsilides* makes material. *Compare Range*, 124 F.4th at 222–24, 232 (involving a single, decades-old nonviolent food-stamp conviction for which Range received probation and no evidence that he posed a present physical danger), *with United States v. Mix*, Crim. No. 24-741, 2025 WL 2731379, at *9–11 (D.N.J. Sept. 25, 2025) (considering the defendant's predicate offense, entire criminal record, and later conduct under *Pitsilides*).

The pleading also does not describe a concrete proposed course of firearm possession beyond the general phrase "self-defense and lawful purposes." D.E. 4-3 ¶ 11. On the present allegations, the Court cannot determine whether Plaintiff is materially similar to *Range* or whether § 922(g)(1) remains constitutional as applied to him. The as-applied claim will be **DISMISSED *without prejudice***.

*4. Fifth Amendment*

Plaintiff alleges that § 922(g)(1) violates due process because it imposes a lifetime prohibition "without any mechanism for review" or consideration of rehabilitation. D.E. 4-3 ¶¶ 16–19. A procedural due process claim requires a protected interest and constitutionally inadequate procedures. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). The Second Complaint identifies neither the process Plaintiff was denied nor any defect in the process that produced his conviction and firearm disability.

More fundamentally, the allegation that no individualized review exists is incorrect. *Pitsilides* expressly holds that, whatever other relief may be available, felons may bring declaratory judgment actions challenging § 922(g)(1) as applied to them, and that such actions require individualized fact finding. 128 F.4th at 210–12. This case invokes that very mechanism. To the extent Plaintiff instead asserts that the firearm restriction itself is substantively unconstitutional, the Second Amendment supplies the explicit constitutional standard and the claim rises or falls under the analysis above. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The Fifth Amendment claim will therefore be **DISMISSED *without prejudice***.

**C. Leave to Amend**

A court generally should permit an IFP plaintiff to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108, 114 (3d Cir. 2002). Amendment of the facial Second Amendment challenge would be futile, so that claim is dismissed

with prejudice. However, because the defects in the as-applied and Fifth Amendment claims are principally factual and pleading-based, Plaintiff will receive one opportunity to amend those claims.

Any amended complaint must be a single, complete pleading that supersedes all prior submissions. It must state, in numbered paragraphs: (1) each conviction Plaintiff contends triggers § 922(g)(1), including the statute, date, and disposition; (2) the conduct underlying each conviction; (3) the sentence imposed and the dates custody, parole, probation, or other supervision ended; (4) Plaintiff's complete criminal history; (5) specific post-conviction facts bearing on rehabilitation and dangerousness; (6) the precise firearm possession Plaintiff intends to undertake; and (7) the constitutional basis for each requested form of relief. Pages copied from legal websites, outdated descriptions of reversed decisions, and conclusory assertions are not a substitute for those facts. A failure to supply the requisite information may result in dismissal with prejudice.

## IV. CONCLUSION AND ORDER

For the reasons stated above,

**IT IS** on this **13th** day of August, 2026,

**ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche, Acting Attorney General of the United States, and Robert Cekada, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, are substituted as Defendants. The Clerk shall update the caption; and it is further

**ORDERED** that Plaintiff's Second IFP Application, D.E. 4 and D.E. 4-2, is **DENIED** ***without prejudice***; and it is further

**ORDERED** that Plaintiff's facial Second Amendment challenge to 18 U.S.C. § 922(g)(1) is **DISMISSED** ***with prejudice*** under 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that Plaintiff's as-applied Second Amendment claim and Fifth Amendment claim are **DISMISSED** ***without prejudice*** under 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that the Clerk of Court shall **ADMINISTRATIVELY TERMINATE** this action; and it is further

**ORDERED** that within **30 days** of entry of this Order, Plaintiff may seek to reopen this matter by submitting both: (a) an amended complaint that complies with this Order; and (b) either a fully completed AO 239 application that accurately states all requested amounts and reconciles the inconsistencies identified above, or the full $405 filing fee; and it is further

**ORDERED** that if Plaintiff does not timely comply with paragraph 6, the Court may direct the Clerk to close the matter without further notice; and it is further

**ORDERED** that the Clerk shall mail Plaintiff a copy of this Memorandum Order and a blank AO 239 form by regular mail; and it is finally

**ORDERED** that upon Plaintiff's timely submission of both an amended complaint that complies with this Order and either a fully completed AO 239 application or the full $405 filing fee, the Clerk shall **REOPEN** this action for further review.

Evelyn Padin, U.S.D.J.